IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : : : | |
| Plaintiff, | : : | |
| v. | : : | CIVIL ACTION NO. 1:23-cv-00735-LMM |
| MICHAEL K. MOLEN, et al., | : : : | |
| Defendants. | : : | |

## ORDER

This case comes before the Court on the Securities and Exchange Commission's Motion to Set Disgorgement and Prejudgment Interest and to Impose Civil Penalties [10]. After due consideration, the Court enters the following Order.

**I.   BACKGROUND**

The Securities and Exchange Commission (SEC) filed this lawsuit against Defendants Michael K. Molen, Seth M. Molen, Industry Source Consulting, Inc. ("INSO"), and Pixel Arcanum, Inc. ("Pixel") for alleged violations of antifraud and registration provisions of securities laws. Dkt. No. [1]. Specifically, the SEC alleged that Defendant INSO falsely reported financial information and that Defendant Michael Molen, the company's sole officer, falsely certified reports

containing such information. Id. ¶¶ 25, 34, 53, 57, 65–68. At the same time, Defendant INSO allegedly paid Defendant Michael Molen hundreds of thousands of dollars in undisclosed compensation. Id. ¶ 45–48. The SEC also claimed that Defendant Pixel, in coordination with Defendants Seth and Michael Molen, evaded federal securities registration requirements by converting 1.4 billion shares of INSO securities to common stock. Id. ¶ 77–78. Defendant Pixel subsequently sold this common stock for gross proceeds of over $1.1 million, most of which was eventually distributed to Defendants Seth and Michael Molen. Id. ¶¶ 79, 84–86.

Without admitting or denying the allegations in the SEC's Complaint, Defendants consented to liability for the securities violations alleged by the SEC. See Dkt. Nos. [1-1, 1-3, 1-5, 1-7]. Defendants also agreed to pay disgorgement of ill-gotten gains, prejudgment interest, and civil penalties in amounts later to be determined by the Court. Id. The Court subsequently entered consent judgments against Defendants. Dkt. Nos. [3, 4, 5, 6]. The judgments, along with enjoining Defendants from future securities violations and certain trading activities, established Defendants' liability for disgorgement, prejudgment interest, and civil penalties. Id. The judgments also clarified that the allegations in the SEC's Complaint would be accepted as true for the purpose of determining the amount of Defendants' liability. Id. The SEC now moves to set the amounts of each Defendant's liability. Dkt. No. [10].

## II. DISCUSSION

Defendants are already subject to injunctions and have agreed that the Court shall assign disgorgement damages with prejudgment interest. Defendants have also agreed that the Court can determine whether to impose civil monetary penalties. Defendants' only challenge to the SEC's proposed amounts of disgorgement, interest, and penalties is that Defendants are unable to pay these amounts. Dkt. No. [22]. In support of their position, Defendants Michael Molen and Seth Molen offer affidavits attesting to the financial hardships they have experienced since this case was initiated. Id. at 13–14. The SEC replies that, although Defendants' ability to pay may be considered as a factor in setting civil penalties, other factors—such as the egregiousness of Defendants' violations— weigh in favor of the SEC's requested penalties. Dkt. No. [23]. Additionally, the SEC argues that Defendants' ability to pay is irrelevant for the purposes of setting disgorgement and prejudgment interest. Id. The Court now determines the appropriate remedies for Defendants' violations of securities laws.

### A. Disgorgement

First, the SEC requests disgorgement of ill-gotten gains from each Defendant. The Court has authority to "require disgorgement . . . of any unjust enrichment by the person who received such unjust enrichment as a result of such violation." 15 U.S.C. § 78u(d)(3). "The SEC is entitled to disgorgement upon producing a reasonable approximation of a defendant's ill-gotten gains." SEC v. Calvo, 378 F.3d 1211, 1217 (11th Cir. 2004). Once the SEC produces a reasonable

approximation, the burden shifts to the defendant to demonstrate that the SEC's estimate is unreasonable. Id. "[T]he power to order disgorgement extends only to the amount with interest by which the defendant profited from his wrongdoing." SEC v. ETS Payphones, Inc., 408 F.3d 727, 735 (11th Cir. 2005) (quoting SEC v. Blatt, 583 F.2d 1325, 1335 (5th Cir. 1978)). The Court reviews the SEC's request for disgorgement as to each group of defendants below.

### 1. Defendant INSO.

The SEC first argues that Defendant INSO should be required to pay disgorgement of $240,000. Dkt. No. [10-1] at 18–22. In support of this figure, the SEC claims that Defendant INSO earned $240,000 from selling 5,142,856 shares of its common stock during the period in which Defendant INSO's false and misleading financial reports were published. Dkt. No. [10-1] at 20; Dkt. No. [10-2] ¶¶ 9–10. In response, Defendants do not argue that the SEC's disgorgement figure is unreasonable. Dkt. No. [22]. Instead, Defendant INSO represents that "it is not in a position to pay any disgorgement or interest" and cautions that any amount of disgorgement will cause Defendant INSO's shareholders to suffer a "complete loss in value of their shares." Id. at 10. The SEC replies that Defendant INSO's financial status is irrelevant to the calculation of disgorgement. Dkt. No. [23] at 3.

The Court agrees with the SEC. As Defendants concede, "nothing in the securities laws expressly prohibits a court from imposing penalties or disgorgement liability in excess of a violator's ability to pay." SEC v. Warren, 534

F.3d 1368, 1370 (11th Cir. 2008); see also Calvo, 378 F.3d at 1217. "A contrary rule would allow con artists to escape disgorgement liability by spending their ill-gotten gains—an absurd result." Warren, 534 F.3d at 1370 n.2. Here, the SEC alleges that Defendant INSO received $240,000 from the sale of its stock during the period in which Defendant INSO's false and misleading reports were publicly posted and in effect. Dkt. No. [10-1] at 20. Defendants do not challenge that the SEC's figure is a reasonable approximation of Defendant INSO's ill-gotten gains. Dkt. No. [22]. Thus, the Court finds that $240,000 is a reasonable approximation of Defendant INSO's ill-gotten gains and therefore sets Defendant INSO's disgorgement liability at $240,000.

### 2. Defendants Michael Molen, Seth Molen, & Pixel

The SEC next argues that Defendants Michael Molen, Seth Molen, and Pixel should be jointly and severally liable for disgorgement of $1,441,417. Dkt. No. [10-1] at 20. In support of this figure, the SEC claims that Defendant Pixel sold unregistered INSO common stocks for $1,291,642 and unregistered INSO notes for $149,775. Dkt. No. [10-2] ¶¶ 12–16. The SEC alleges that these proceeds were deposited into Defendant Pixel's bank account and ultimately were distributed to Defendants Seth and Michael Molen. Id. ¶¶ 15–16. Again, Defendants respond that they cannot pay this disgorgement figure. Dkt. No. [22]. Specifically, Defendants Michael Molen and Seth Molen affirm personal financial hardships, while Defendant Pixel claims that it is no longer in business. Id. at 10, 13–14.

However, the Court has already determined that ability to pay is not a defense to disgorgement. Because Defendants do not otherwise challenge the SEC's disgorgement figure and the Court finds that $1,441,417 is a reasonable approximation of Defendants' ill-gotten gains, the Court sets disgorgement at $1,441,417.

Additionally, the Court finds that joint and several liability is appropriate here. Defendants do not oppose the imposition of joint and several liability as the SEC has requested it. Dkt. No. [22]. "It is a well settled principle that joint and several liability is appropriate in securities laws cases where two or more individuals or entities have close relationships in engaging in illegal conduct." Calvo, 378 F.3d at 1215. Here, Defendants Seth Molen and Michael Molen, through Defendant Pixel, orchestrated a scheme to evade securities registration requirements. Dkt. No. [1] ¶¶ 69–86. Specifically, Defendant Michael Molen sold INSO stocks and notes to Defendant Pixel, which converted the securities into common stocks and sold the stocks through brokerage firms. Id. ¶ 77–79. Presumably to conceal this relationship, Defendant Seth Molen held himself out to the brokerage firms and other third parties as Pixel's sole officer and director. Id. ¶ 71. Thus, Defendants Michael Molen, Seth Molen, and Pixel were closely connected while carrying out a single illegal scheme. Accordingly, joint and several liability is appropriate with respect to the disgorgement amounts attributed to Defendants Michael Molen, Seth Molen, and Pixel. The Court

therefore sets joint and several disgorgement liability at $1,441,417 for Defendants Michael Molen, Seth Molen, and Pixel.

## B. Prejudgment Interest

The SEC next asks this Court to order Defendants to pay prejudgment interest on the disgorged amount. The decision to award prejudgment interest is within this Court's discretion. See SEC v. Merch. Cap., LLC, 486 F. App'x 93, 97 (11th Cir. 2012) (affirming a district court's imposition of prejudgment interest). "Without prejudgment interest, the [Defendants] would have benefitted from what in effect amounted to interest-free loans of the ill-gotten funds." Id.

First, the SEC requests $37,622 in prejudgment interest on Defendant INSO's disgorgement amount, dating back only from Defendant INSO's most recent bank deposit of the funds described above. Dkt. No. [10-2] ¶ 11. Second, the SEC requests $432,642 in prejudgment interest on Defendants Michael Molen, Seth Molen, and Pixel's disgorgement amount, starting from a date designated in Defendants' consent judgments. Id. ¶ 17; Dkt. No. [3] at 6; Dkt. No. [4] at 6; Dkt. No. [5] at 6. For both figures, the SEC offered a list of interest rates it used to calculate prejudgment interest. Dkt. No. [10-2] at 8–9. Defendants do not challenge the SEC's calculations, interest rates, or starting dates. Dkt. No. [22]. Accordingly, the Court grants the SEC's request for prejudgment interest. See SEC v. Lauer, 478 F. App'x 550, 557–58 (11th Cir. 2012) (noting that the district court has "wide discretion" to impose prejudgment interest). The Court therefore sets prejudgment interest at $37,622 for Defendant INSO and

7

$432,642 for Defendants Michael Molen, Seth Molen, and Pixel. For the same reasons stated above, Defendant Michael Molen, Seth Molen, and Pixel are jointly and severally liable for their prejudgment interest obligations.

### C. Civil Monetary Penalties

The SEC also asks this Court to award "third tier" civil monetary penalties against Defendants. Once again, Defendants' only challenge to these penalties is that Defendants lack the ability to pay the SEC.

Section 20(d) of the Securities Act and Section 21(d)(3) of the Exchange Act—with nearly identical language—allow the SEC to seek civil penalties imposed by the Court. The Exchange Act provides,

> Whenever it shall appear to the Commission that any person has violated any provision of this chapter, [or] the rules or regulations thereunder . . . the Commission may bring an action in a United States district court to seek, and the court shall have jurisdiction to (i) impose, upon a proper showing, a civil penalty to be paid by the person who committed such violation . . . .

15 U.S.C. § 78u(d)(3)(A).[1] To determine the amount of the penalty, the Act outlines three tiers, with ascending penalty caps based on the nature of the violation.[2] Under the third and most serious tier, the Act states:

> Notwithstanding clauses (i) and (ii), the amount of a civil penalty imposed . . . for *each violation* . . . shall not exceed the greater of (I) $223,229 for a natural person or $1,116,140 for any other person . . . if—

---

[1] Due to the nearly identical language of the relevant statutes, only the Exchange Act will be quoted to avoid redundancy.

[2] Each of the penalty caps have been updated for inflation per 17 C.F.R. § 201.1001.

> (aa) the violation described in subparagraph (A) involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement; and
>
> (bb) such violation directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons.

§ 78u(d)(3)(B)(iii) (emphasis added).

"Civil penalties are intended to punish the individual wrongdoer and to deter him and others from future securities violations." SEC v. Monterosso, 756 F.3d 1326, 1338 (11th Cir. 2014). The "Commission need only make 'a proper showing' that a violation has occurred and a penalty is warranted." Warren, 534 F.3d at 1370. Although the statute leaves the amount to be imposed to the discretion of the district judge, "courts consider numerous factors, including the egregiousness of the violation, the isolated or repeated nature of the violations, the degree of scienter involved, whether the defendant concealed his trading, and the deterrent effect given the defendant's financial worth." Miller, 744 F. Supp. 2d at 1344 (citing SEC v. Sargent, 329 F.3d 34, 42 (1st Cir. 2003)). The Act also authorizes penalties for "each violation," so "courts are empowered to multiply the statutory penalty amount by the number of statutes the defendant violated, and many do." Id. at 1345.

The SEC requests that Defendants INSO, Michael Molen, and Seth Molen receive civil penalties because the SEC alleges that Defendants were involved in an eight-year fraudulent scheme involving significant risk of financial loss to

others. The SEC requests a $1,116,140 civil penalty from Defendant INSO and two separate $446,458 civil penalties from Defendants Michael Molen and Seth Molen.³ Dkt. No. [10-1] at 23. In response, Defendants do not dispute that their actions risked a substantial financial loss to others or that their actions involved fraud. Dkt. No. [22]. Instead, Defendants only challenge the SEC's recommendation on the ground that Defendants cannot pay any civil penalty assessed against them. Id.

The Court finds that third-tier civil penalties are appropriate. As an initial matter, the Court notes that Defendants have provided minimal information for the Court to assess Defendants' financial situations.⁴ However, even assuming Defendants lack the financial ability to pay a civil penalty, the Court still finds that penalties are warranted. "At most, ability to pay is one factor to be considered in imposing a penalty." Warren, 534 F.3d at 1370. Here, other factors—including the egregiousness of the violations, the repeated nature of the

---

³ The SEC does not seek a civil penalty against Defendant Pixel. Dkt. No. [10-1] at 24.

⁴ Defendants Michael Molen and Seth Molen each offer one-page declarations with scarce details about their financial situations, including that Defendant Michael Molen's bank accounts are currently overdrawn and that neither Defendant can afford to hire an attorney in this matter. Dkt. No. [22] at 13–14. As to Defendant INSO, Defendants only state that the company's financial situation has "worsened" and that Defendant INSO is operating at a monthly deficit. Id. at 10.

violations, the degree of scienter involved, and the value of deterrence—weigh in favor of civil penalties.

First, Defendants' conduct was egregious in this case.[5] Defendant INSO published numerous false documents overreporting assets and failing to disclose compensation it paid to Defendant Michael Molen. Dkt. No. [1] ¶¶ 28–35, 47, 53–61. Defendant Michael Molen hid these misrepresentations by claiming that Defendant INSO's financial reports were prepared by an accountant when, in fact, he prepared the reports. Id. ¶ 65. Defendant Seth Molen, by holding himself out as the sole officer of Defendant Pixel, also played a key role in concealing Defendant Michael Molen's relationship with Defendant Pixel. Id. ¶¶ 71–86. Thus, Defendants' conduct was egregious.

Second, Defendants' violations were repeated. Defendant INSO, under Defendant Michael Molen's direction, posted at least 60 false or misleading reports. Dkt. No. [1] ¶¶ 28, 34. Over an eight-year period spanning from 2014 to 2022, Defendant INSO overreported its cash flows by hundreds of thousands of dollars and fabricated 45% of its reported assets. Id. ¶¶ 53, 56–58. During the same period, Defendant Seth Molen facilitated the conversion of 1.4 billion shares of stock, most of which he sold through Defendant Pixel. Id. ¶¶ 78–79. Thus, Defendants' violations were not isolated.

---

[5] As discussed above, Defendants agreed that the Court would consider the allegations in the SEC's Complaint as true for the purpose of evaluating the SEC's instant Motion. See Dkt. No. [3] at 7; Dkt. No. [4] at 6; Dkt. No. [5] at 7; Dkt. No. [6] at 6.

Third, Defendants acted with scienter. Defendants acted with the intent to deceive and a "severe reckless disregard for the truth." Id. ¶¶ 95–96. Defendants knowingly made several false statements of material facts to the public. Id. ¶ 103. Defendants also took steps to conceal their behavior, including by certifying fraudulent financial statements. Id. ¶¶ 64–66. Thus, Defendants' intent to commit the violations at issue in this case is apparent.

Finally, the Court finds that the deterrent effect of a civil penalty is appropriate in spite of Defendants' diminished financial worth. Defendants argue that their financial statuses should prevent the imposition of any penalties. Dkt. No. [22] at 11. But as the purpose of civil monetary penalties is both punishment and deterrence, the Court finds that poverty alone cannot defeat the need for penalties in this case. See SEC v. StratoComm Corp., 89 F. Supp. 3d 357, 373 (N.D.N.Y. 2015) ("While the court may take the defendant's current financial difficulties into account, these circumstances alone cannot negate the need for a severe civil penalty."). And a party's financial position is fluid. Should Defendants' financial circumstances improve, the SEC may be able to collect on these penalties in the future. SEC v. Kane, No. 97-cv-2931, 2003 WL 1741293, at *4 (S.D.N.Y. Apr. 1, 2003) ("[T]he court agrees with the Commission that it should not ignore the possibility that a defendant's fortunes will improve, and that one day the SEC will be able to collect on even a severe judgment.").

Thus, in light of the above factors, the Court finds that the SEC's recommendations for third-tier civil monetary penalties are appropriate. The

Court therefore imposes a $1,116,140 civil penalty against Defendant INSO reflecting a single third-tier statutory penalty. The Court also imposes a $446,458 civil penalty against Defendant Michael Molen reflecting two third-tier statutory penalties for each of Defendant Michael Molen's two scienter-based violations.[6] Further, the Court imposes a $446,458 civil penalty against Defendant Seth Molen reflecting two third-tier statutory penalties for each of Defendant Seth Molen's scienter-based violations.

## III. CONCLUSION

In accordance with the foregoing, the Securities and Exchange Commission's Motion to Set Disgorgement and Prejudgment Interest and to Impose Civil Penalties [10] is **GRANTED.** It is hereby **ORDERED** that **FINAL JUDGMENT** as to Defendants shall be entered as follows.

Defendants shall pay disgorgement of ill-gotten gains and prejudgment interest thereon, as well as civil penalties in the following amounts:

| Defendant | Disgorgement | Pre-Judgment Interest | Civil Penalty | Total |
|---|---|---|---|---|
| INSO | $240,000 | $37,622 | $1,116,140 | $1,393,762 |
| Michael Molen | | | $446,458 | $446,458 |
| Seth Molen | | | $446,458 | $446,458 |
| Michael Molen, Seth Molen, & | $1,441,417 | $432,642 | | $1,874,059 |

---

[6] As described above, courts may multiply the statutory penalty amount by the number of statutes a defendant violated. See Miller, 744 F. Supp. 2d at 1345. Here, pursuant to the SEC's recommendation, the Court multiplies the statutory penalty by two—the number of scienter-based violations that Defendants Michael Molen and Seth Molen committed. Dkt. No. [1].

| Pixel, jointly and severally | | | | |
|---|---|---|---|---|

Defendants shall satisfy these obligations by paying their respective amounts to the Securities and Exchange Commission within 30 days after entry of this Final Judgment. Defendants may transmit payment electronically to the Commission, which will provide detailed ACH transfer/Fedwire instructions upon request. Payment may also be made directly from a bank account via Pay.gov through the SEC website at http://www.sec.gov/about/offices/ofm.htm. Defendants may also pay be certified check, bank cashier's check, or United States postal money order payable to the Securities and Exchange Commission, which shall be delivered or mailed to

Enterprise Services Center
Accounts Receivable Branch
6500 South MacArthur Boulevard
Oklahoma City, OK 73169

and shall be accompanied by a letter identifying the case title, civil action number, and name of this Court; the relevant Defendant's name as a defendant in this action; and specifying that payment is made pursuant to this Final Judgment.

Defendants shall simultaneously transmit photocopies of evidence of payment and case identifying information to the Commission's counsel in this action. By making this payment, Defendants relinquish all legal and equitable right, title, and interest in such funds and no part of the funds shall be returned to Defendants. The Commission may enforce the Court's judgment for

disgorgement and prejudgment interest by using all collection procedures authorized by law, including, but not limited to, moving for civil contempt at any time after 30 days following entry of this Final Judgment. Defendants shall pay post-judgment interest on any amounts due after 30 days of entry of this Final Judgment pursuant to 28 U.S.C. § 1961.

The Commission may enforce the Court's judgment for penalties by the use of all collection procedures authorized by law, including the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001 *et seq.*, and moving for civil contempt for the violation of any Court orders issued in this action. Defendants shall pay post-judgment interest on any amounts due after 30 days of the entry of this Final Judgment pursuant to 28 U.S.C. § 1961. The Commission shall hold the funds, together with any interest and income earned thereon (collectively, the "Fund"), pending further order of the Court.

The Commission may propose a plan to distribute the Fund subject to the Court's approval. Such a plan may provide that the Fund shall be distributed pursuant to the Fair Fund provisions of Section 308(a) of the Sarbanes-Oxley Act of 2002. The Court shall retain jurisdiction over the administration of any distribution of the Fund and the Fund may only be disbursed pursuant to an Order of the Court.

Regardless of whether any such Fair Fund distribution is made, amounts ordered to be paid as civil penalties pursuant to this Judgment shall be treated as penalties paid to the government for all purposes, including all tax purposes. To

preserve the deterrent effect of the civil penalty, Defendants shall not, after offset or reduction of any award of compensatory damages in any Related Investor Action based on any Defendants' payment of disgorgement in this action, argue that Defendants are entitled to, nor shall they further benefit by, offset or reduction of such compensatory damages award by the amount of any part of Defendants' payment of a civil penalty in this action ("Penalty Offset"). If the court in any Related Investor Action grants such a Penalty Offset, the Defendants shall, within 30 days after entry of a final order granting the Penalty Offset, notify the Commission's counsel in this action and pay the amount of the Penalty Offset to the Untied States Treasury or to a Fair Fund, as the Commission directs. Such a payment shall not be deemed an additional civil penalty and shall not be deemed to change the amount of the civil penalty imposed in this Judgment. For purposes of this paragraph, a "Related Investor Action" means a private damages action brought against Defendants by or on behalf of one or more investors based on substantially the same facts as alleged in the Complaint in this action.[7]

    It is further **ORDERED** that this Court shall retain jurisdiction of this matter for the purposes of enforcing the terms of this Judgment. The Clerk is

---

[7] It is further **ORDERED** that the Consent Judgments previously entered by this Court, Dkt. Nos. [3, 4, 5, 6], are incorporated herein with the same force and effect as if fully set forth herein, and that Defendants shall comply with all the undertakings and agreements set forth therein. To the extent that the SEC requests that the Court incorporate certain of those provisions in this Order, the Court finds such action unnecessary.

instructed to **CLOSE** this case and enter **FINAL JUDGMENT** against Defendants.

    **IT IS SO ORDERED** this 30th day of November, 2023.

                                              **Leigh Martin May**
                                              **United States District Judge**